(February 19, 1906.)

## NORTH & DOUGLAS, a Copartnership Composed of GEORGE NORTH and RICHARD DOUGLAS, Respondent, v. T. J. WOODLAND, Appellant.

[85 Pac. 215.]

SHEEP INFECTED WITH SCAB—DUTY OF OWNER OR EMPLOYEE—SUFFI-
CIENCY OF PLEADING.

1. In a civil action for damages, under section 21 (Sess. Laws 1901, p. 151), *scienter* need not be alleged or proven where carelessness or negligence is averred.

2. In declaring the acts mentioned in the above section punishable by fine, imprisonment, or both, the legislature was exercising the police powers of the state, and in such case the complaint need not allege that the defendant knew the act complained of was unlawful.

3. Under the provisions of sections 21 (*supra*), 23, and 6886 of the Revised Statutes, a complaint that alleges that the injury complained of was the result of the careless and negligent acts of defendant is sufficient.

4. Where the instructions to the jury fairly state the law on all the issues involved, it is not error to refuse requests of defendant, even though they may be a repetition of the law of the case.

5. Where a verdict is not in excess of the demand of plaintiff's complaint, and no error appearing in the admission of the evidence or instructions of the court, and there is any evidence tending to prove the amount of damages, this court will not examine the evidence to ascertain whether the verdict is excessive or not where the defendant fails or refuses to submit evidence.

(Syllabus by the court.)

APPEAL from the District Court of Sixth Judicial District for Bingham County.   Hon. J. M. Stevens, Judge.

Action for damages from which defendant appealed.  *Judgment affirmed.*

J. W. Jones and Gray & Boyd, for Appellant.

We contend that an averment in the complaint of knowledge on the part of the defendant as to the condition of his sheep,

as well as proof of such knowledge, is essential to a recovery herein. Section 9. of the act to suppress contagious and infectious diseases of sheep (Idaho Sess. Laws, 1901, p. 145), recognizes this doctrine that *scienter* must be alleged and proved in cases of this character. (*Patee v. Adams,* 37 Kan. 133, 14 Pac. 505; Wade on Notice, 2d ed., 271; Chitty on Pleading, 69; *Voorman v. Lawyer,* 13 Johns. 339; *Dearth v. Baker,* 22 Wis. 73; *Lyke v. Van Leuven,* 4 Denio, 127; *Missouri Pac. Ry. Co. v. Finley,* 38 Kan. 550, 16 Pac. 951, 956; 2 Am. & Eng. Ency. of Law, 2d ed., pp. 364, 381, 382, and cases there cited; *Hawks v. Locke,* 139 Mass. 205, 52 Am. Rep. 702, 1 N. E. 543; 2 Cyc. 333, 337, and cases cited; *Van Leuven v. Lyke,* 1 N. Y. 515, 49 Am. Dec. 346; 1 Estee on Pleading, 4th ed., secs. 1870, 1872; *Clarendon Land etc. Co. v. McClelland Bros.,* 86 Tex. 179, 23 S. W. 576, 1100, 22 L. R. A. 105; 89 Tex. 483, 59 Am. St. Rep. 70, 34 S. W. 98, 35 S. W. 474, 31 L. R. A. 669.)

The testimony for the plaintiffs shows indubitably that they were guilty of contributory negligence, resulting in the loss complained of herein. For this reason, they cannot recover. "Evidence ought not to be admitted of facts not put in issue by the pleadings." (*Haner v. Northern Pac. Ry. Co.,* 7 Idaho, 305, 62 Pac. 1028.) None of the instructions asked by the plaintiffs and given by the court are predicated on belief from the evidence, or words of a like purport, and they are therefore erroneous. (Blashfield's Instructions to Juries, sec. 79, and cases cited; Sackett's Instructions to Juries, 2d ed., and cases cited.)

Plaintiffs' Instruction No. 2 is contrary to law and erroneous, in that it assumes that there was a difference in the value of the sheep at time of mixing and at time of turning them back, instead of leaving it to the jury to find whether there was a difference or not. This is a fact to be found and not assumed. (*Barrelett v. Bellgard,* 71 Ill. 280.)

Plaintiffs' Instruction No. 4 is erroneous, in that it assumes that eleven head of sheep were never returned. (Sackett's Instructions to Juries, 2d ed., sec. 16, and cases cited; Blashfield's Instructions to Juries, sec. 29 et seq., and cases cited.)

Hansbrough & Adamson, for Respondent.

When sheep break out of their inclosure and communicate a disease known as hoof rot or hoof distemper to other sheep, it is not necessary to prove that the defendant had knowledge of such disease in order to recover damages for such infection. (*Lynch v. Grayson,* 5 N. Mex. 487, 25 Pac. 992. Affirmed in *Grayson v. Lynch,* 163 U. S. 468, 16 Sup. Ct. Rep. 1064, 41 L. ed. 230; *Croff v. Cresse,* 7 Okla. 408, 54 Pac. 558.)

In an indictment against a party for driving scabby sheep across the range, it need not be alleged that the accused knew that the sheep had scab. (*State v. Sterritt,* 19 Or. 352, 24 Pac. 523.) Section 21 of the Idaho Session Laws of 1901, page 151, recognizes the doctrine that *scienter* need not be alleged or proven. Respondent was entitled to all consequential damages. (Idaho Sess. Laws 1901, p. 150, sec. 19.)

Under a general allegation of damage the plaintiff may prove and recover those damages which naturally and necessarily result from the act complained of, for the law implies that they will proceed from it. (2 Sutherland on Damages, 3d ed., sec. 418, and cases cited; *Rauma v. Bailey,* 80 Minn. 366, 83 N. W. 191; *Moyer v. Gorden,* 113 Ind. 282, 14 N. E. 476; *Wrought Iron Range Co. v. Graham,* 80 Fed. 474, 25 C. C. A. 570; *Smith v. Pittsburgh etc. Ry. Co.,* 90 Fed. 783; *City of Abiline v. Wright,* 4 Kan. App. 708, 46 Pac. 715.)

"If there is an issue of fact to be determined from the evidence under proper instructions from the court, as to the law, it is error for the court to charge the jury that the plaintiff is entitled to recover; but if the evidence makes the case so clear for the plaintiff that a verdict for the defendant would be contrary to the evidence, the error is immaterial." (*Levitzky v. Canning,* 33 Cal. 299.) The court is authorized to direct a verdict for either party when a contrary verdict could not be sustained by the evidence. (Hughes on Instructions to Juries, sec. 127, and cases cited; *Page v. Tucker,* 54 Cal. 121.) The court has power to direct a verdict when there is no conflict in the evidence. (*Martin v. Ward,* 69 Cal. 129, 10 Pac. 276; *Chen-*

*ery v. Palmer,* 6 Cal. 122, 65 Am. Dec. 493; *Watson v. Damon,* 54 Cal. 278; *Page v. Tucker,* 54 Cal. 121.)

STOCKSLAGER, C. J.—This action is for the recovery of damages, plaintiffs alleging that defendant wrongfully and negligently permitted his sheep, which were infected with scab, and not in charge of a herder, to run upon the public highway and mix with the sheep of plaintiff, which were being driven along such highway, free from scab or other infectious disease, fat and in good condition and not upon quarantined ground; that because of such mixing and intermingling of sheep, the plaintiffs were compelled to dip those which came in contact with defendant's sheep and otherwise to treat them, to the injury of such sheep and to plaintiffs' damage in the sum of $477.55. Defendant filed a general demurrer which was overruled, whereupon he filed an answer and cross-complaint. The answer denies all the material allegations of the complaint. The cross-complaint sets up negligence on the part of plaintiffs in permitting the sheep to be mixed and comingled, alleging that by reason of the careless and negligent manner plaintiffs, their agents and employees, handled their sheep in driving along the highway, about two hundred and sixty of plaintiffs' sheep escaped from their herd and entered through the fence and upon the feed ground of defendant and without defendant's knowledge or consent mixed with his sheep. Plaintiffs answered this cross-complaint denying the material allegations thereof. At the trial of the cause a jury was impaneled and a verdict was returned in favor of the plaintiffs for the sum of $464.03, for which amount judgment was entered. The appeal is from the judgment and from an order overruling a motion for a new trial. Counsel for appellants' assign sixteen errors and urge all of them in their brief. The first is that the demurrer to the complaint should have been sustained. They say: "The action is one *ex delicto* for damages, and the right of plaintiffs to recover depends solely upon their proper allegation and proof of negligence on the part of defendant only." Again they say: "It was not alleged in the complaint that the sheep of de-

fendant were quarantined because of their having any infectious disease, nor was it alleged that defendant knew or had reason to believe that his sheep had the scab or any infectious disease at the time the intermingling occurred, and for these reasons the attempted allegation of negligence on the part of the defendant is insufficient. It consists solely in the statement that defendant carelessly and negligently permitted the herds to get together and become mixed on the public highway, by reason of there being no herder with defendant's said sheep.'' This statement in the brief of learned counsel for appellant fairly states the issue involved in this action. In other words, if the doctrine of *scienter* is applicable, the demurrer should have been sustained; otherwise it was not error to overrule it. An examination and construction of the various statutory provisions of this state relating to the privileges granted flock-masters and their employees in handling their herds on the public domain and the public highways of the state, together with the restrictions cast upon sheep, infected with what is commonly called scab, or any other infectious or contagious disease, must necessarily determine the important question at issue, as the constitutionality of none of the provisions is questioned. It is apparent that all the legislation on this question has been with the view of entirely eradicating scab and other diseases from the flocks of the state, and whilst in some instances the remedy may seem harsh and even oppressive, nevertheless it is evident that such legislation has met with the approbation of those engaged in the sheep industry in this state or it would have been defeated, no other industry being interested in the subject matter of such legislation. The first legislation we find bearing on this question is section 6886 of the Revised Statutes of 1887; it says: ''Any person owning sheep infected with scab or any other infectious disease, who fails to keep the same secure from contact with other sheep or who moves or drives the same upon any highway, byway or across any range where other sheep are liable to range or be driven, without first obtaining a written permission of the sheep commissioner as provided in section 1221 of the Political Code, is guilty of a misdemeanor, and must

be fined in any sum not less than two hundred and fifty nor more than two thousand dollars.'' Section 1221 above referred to and section 6886, *supra,* were enacted by the twelfth session of our territorial legislature and were incorporated into the Revised Statutes of 1887. The conditions and penalties are practically the same. Section 1221, however, provides that ''the owner of any sheep infected with scab . . . . may move the same by first obtaining a written permission of the sheep commissioner of the county wherein he wishes to move them, which permission must state the manner in which they are to be moved, and the place to which they are to be moved and the route designated; but the sheep commissioner must not give permission to any person to move any sheep so infected across any range where healthy sheep are accustomed to range.'' These two sections seem to have been sufficient for the purpose for which they were intended until the sixth session of our state legislature (1901), when an act entitled ''An act to suppress contagious and infectious diseases of sheep, to create the office of sheep inspector and deputy state sheep inspectors . . . . and repealing all acts in conflict,'' was enacted. Section 9 of this act provides: ''Whenever, upon an examination of any bands or herds of sheep kept or herded in any county of the state of Idaho, the deputy sheep inspector of such county or district thereof shall find such sheep, or any portion of them, affected or infected with the scab or scabbies, or any other infectious or contagious disease, the entire band or herd shall be considered as infected and treated as such and he shall immediately quarantine the same and forthwith notify the owner or person in charge of such sheep, in writing.'' Section 21 of the same act provides: ''Any person or persons owning or having under their control sheep or bands of sheep which have become infected with the scab or other infectious or contagious disease, for a period of fifteen days without reporting the fact to the deputy sheep inspector of such county or district thereof where such sheep are situate, in writing, shall be guilty of a misdemeanor.'' Section 23 provides: ''In any action or proceeding, civil or criminal, arising under this act, and all persons having any interest

in sheep or controlling the same, and concerning which said action or proceeding is had, shall be deemed the owner of said sheep, and shall be liable, jointly and severally, for such violation. Any herder or shepherd or other person in charge of sheep may be sworn to give any deputy sheep inspector any and all information as to the condition of the sheep in his charge, to the best of his knowledge, on being requested so to do by the deputy, and upon refusing to do so shall be guilty of a misdemeanor.''

This is all the legislation we find bearing directly upon the question under consideration, and it only remains for us to ascertain from the language of the several sections quoted just what was intended by the lawmakers. There can be no question of the intent of the legislature in the passage of all acts relative to scabby sheep; there is no other infectious or contagious disease known to exist among sheep in this state; hence it is conclusive that all legislation is aimed at the eradication of this pest. It is also beyond question that all efforts have been toward the one common purpose of confining the disease to the band where discovered, and by a system of thorough dipping to eradicate it when discovered as quickly as possible. The quarantine law was enacted with this object in view. That parties owning or being in possession of sheep infected with scab should report such fact to the deputy inspector of the county or district within fifteen days, only bears out the conclusion that prompt and heroic efforts are to be made by all parties concerned to effectually eradicate the disease from the flocks of the state. If the provisions of our law relative to scab are to be construed as urged by counsel for appellant, the entire system is a farce. It would be very convenient for the owner of a band of sheep not to discover scab until a convenient season and then have fifteen days thereafter in which to report such discovery to the deputy inspector for his county or district. The law requires the owner of sheep, as well as anyone in charge thereof, to report their condition, if scab or other infectious or contagious disease is discovered, to the sheep inspector within fifteen days after such discovery, thus enjoining upon the owner and

his employees constant care and watchfulness over their flocks. Again, it is a well-known fact that no one has the opportunity of discovering scab so readily as the herder or person in daily charge of the sheep, and when it develops, it will not be long before he knows it. It has none of the characteristics of what is commonly called "Texas fever." That disease is never apparent in the native Texas cattle, but other cattle coming in contact with Texas cattle, or herded on a range over which they have passed may become inoculated; not so with the scab; it is not difficult to detect; it leaves its marks on every sheep affected, and any practical herder is soon aware of its presence and may find it if he make the effort. As we view it, the object and purpose of our law is to make the owner and herder diligent and careful and report any evidence they may have of the existence of scab in their flocks, and it provides a severe penalty for neglecting to do so. When we ask the reason for the legislation there is but one answer and that is the complete eradication of the disease from the flocks of the state. It is a part of the public policy of the state and comes within the exercise of its police powers. The law presumes that every man knows the condition of his sheep and requires him to report the existence of scab within fifteen days after it makes its appearance—not fifteen days after he has reported it to some one else other than the authorized sheep inspector—and were it otherwise, as is said by counsel for respondents, "a person could drive his scabby sheep upon the public highways and herd and drive them upon the public domain where other sheep without infection were herded and driven; they could infect all the ranges within the state with scab, and all the sheep upon them, and when arrested or a civil action was brought for damages, they could escape the consequences of their wrongful acts by merely saying that they had no notice or knowledge that the sheep were infected with scab." This statement is undoubtedly true, and we think the legislature intended to overcome the difficulties above suggested by section 21 (Sess. Laws 1901, *supra*). It would be practically impossible for the inspector to inspect the innumerable number of sheep within his territory; they

are usually kept as far from civilization and the public high-
ways of the state as possible from early spring until late
fall, then if not on feed grounds, off on the desert and away
from habitations.  If the duty of discovering scab and quar-
antining devolved upon the inspector, the law would be a
nullity, and sheep upon the public range would be constantly
exposed to scab winter and summer.  The law was intended
to make each owner the guardian of his own flocks, and even
goes so far as to impose the duty and add a penalty upon
the herder or person in charge.

In discussing a law similar to ours, the supreme court of
Oregon in *State v. Sterritt,* 19 Or. 352, 24 Pac. 523, which
was an indictment returned by the grand jury charging the
defendant with "unlawfully moving sheep infected with scab
from place to place without first having obtained a traveling
permit therefor."  The information did not charge that the
defendant knew the sheep were infected with scab at the
time of their removal, and for this reason defendant de-
murred to the sufficiency of the indictment.  This demurrer
was overruled.  The court says: "The first objection insisted
upon was that the indictment failed to allege knowledge of
the defendant that the sheep had the scab at the time of their
removal.  In a very large class of offenses, and mainly those
that were classed as *mala in se* at common law, guilty knowl-
edge is necessary to complete the offense, and it must be al-
leged.  But in that other class, wrongs which are forbidden
by statute, and more especially those offenses which are made
punishable in furtherance of the public policy of the state,
such as the exercise of the police powers, the collection of reve-
nue, and the like, are punishable whether the offender had
guilty knowledge or not.  This distinction was lately sustained
in this court in *State v. Chastain,* 19 Or. 176, 23 Pac. 963,
and is adhered to.  The offense under consideration belongs
to the latter classification, and is punishable whether the
accused party knew the sheep were diseased or not."

If a criminal action can be maintained under the statute of
Oregon upon which the above prosecution was based without
alleging and proving guilty knowledge, why may not a civil

action for damages be maintained under section 21, *supra,* without such allegation and proof; we can see no valid reason why not.    The authorities cited by appellant do not reach the issue involved here.

In *Patee v. Adams,* 37 Kan. 133, 14 Pac. 505, the court considered and discussed a case wherein the defendant in good faith purchased in the market at Kansas City certain cattle, shipped them to Manhattan, in Kansas, where they were unloaded into the stockyards of the Union Pacific Railway, and were immediately seized by virtue of a process issued by a justice of the peace, the possession being withheld from defendant, he having no opportunity to examine the cattle; even if the "Texas, splenic" or "Spanish fever" could be detected by an examination as readily as scab, the defendant was in no wise to blame, as it is shown that plaintiff's cattle were diseased by the cattle of defendant whilst they were in the custody of the officer.    The court instructed the jury that "if the defendant knew or had reason to know, or could by ordinary diligence have known, that the cattle were diseased, . . . . you will find for the plaintiff."    This instruction is upheld by the court.    It is said in the opinion: "Doubtless, the legislature has the authority to dispense with the necessity of alleging and proving knowledge; but before a party who is without fault, or without knowledge that his cattle can cause injury, can be held liable, the legislative design to create such liability should be 'plainly pronounced.'"

Under the head of "Proof of Scienter"—when necessary—learned counsel for appellant cite volume 2 of American and English Encyclopedia of Law, 364.    The text says: "If domestic animals are rightfully in the place where they do the injury complained of, the owner will not be liable unless he had knowledge of the vicious propensity of such animal; and in an action for such injuries, knowledge on the part of the owner must be alleged and proved."    Cases are cited by the author under this text from a large number of states, but an examination of them discloses that they follow the subject laid down in the text, and only refer to the vicious or dangerous character of domestic animals and the duty of

the owner thereof in protecting the public from injury there-from. Our attention is also called to pages 381, 382, same book, and under the same heading we find this text: "In those jurisdictions where stock is allowed to run at large, and statutes have been enacted making the owners of diseased or distempered cattle liable for any communication of such disease, it is generally held that *scienter* on the part of the owner of such diseased cattle should be alleged and proved." One of the cases cited here and really the one upon which counsel for appellant seems to place the most reliance, is *Patee v. Adams,* 37 Kan. 133, 14 Pac. 505; the author says: "The theory of the statute is that the liability arises upon the negligence of the party who drives, or causes to be driven, the cattle that communicate the fever; and how can negligence be attributed to those who go into a market in the state and purchase such cattle when they have no notice, and no facts exist by which they would be chargeable with notice that the cattle had the fever, or were liable to communicate it? The rule of the common law in such cases is that knowledge is indispensably necessary to a recovery. This author also cites *Barnum v. Vandusen,* 16 Conn. 200, where defendant's sheep trespassed upon plaintiff's land and communicated to plaintiff's sheep a disease known as hoof distemper, there being no sufficient justification for the trespass; it was held that, "in order to recover damages it was not necessary to show that defendant had knowledge of the diseased state of his sheep but that such evidence was competent to enhance the damages," etc. Other authorities are cited, but they do not convince us that the doctrine announced in *State v. Sterritt* is not the correct one in cases of the character of the one under consideration.

It is next insisted by counsel for appellant that plaintiff was guilty of contributory negligence resulting in the loss complained of herein. For this reason they cannot recover. The complaint alleges, among other things, that said sheep were allowed to become mixed and to get together by reason of the negligence and carelessness of the defendant as aforesaid, and without any fault of the plaintiffs. Evidence was

submitted on the question.   The first witness was C. A. Valentine.   He says: "Mr. Woodland had one band of sheep on the west and one on the east side of the road; there was no one with the band on the west side when we got there and their sheep had been coming out onto the road; . . . . there is a lot of willows growing and we could not see them until we got close to them, and they started coming out on the road and getting into our sheep. . . . . . After we had them mostly all cut off and going back to their feed ground, then Mr. Woodland and two or three of his men came over from on the east side; no one was with this band on the west side."   Willard Christianson testified: "It took us about fifteen minutes to separate the sheep; Mr. Woodland's sheep were right along the road when I first saw them there; the feed ground extends right up to the road; and there was no one with the sheep when the mix-up began."   It is shown by the evidence that as soon as the men in charge of respondents' sheep discovered the sheep of appellant near the highway through which they were driving repondents' sheep, they used every effort within their power to prevent the mix-up. It was clearly the duty of appellant to have some one in charge of his sheep at all times, especially when they were being fed and held near the highway through which other sheep were privileged to pass, whether they were diseased or not.   It was shown that the fence was not sufficient to keep them from passing back and forth from the feed grounds to the highway, and with ordinary diligence on the part of appellant his sheep could have been kept back from the highway whilst respondents' sheep were passing through. This duty he owes to the public who have license to the use of the highway, and, in our opinion, it was his negligence in not having a herder in charge of his sheep that resulted in the mix-up, and consequently the damage resulting therefrom to respondents.   Mr. Douglas, one of the respondents, testified to a conversation with appellant the day following the mix-up as follows: "I said, 'Mr. Woodland, you know better than I do how those sheep have been run, and you know whether they have scab, and if you will guarantee me that

those sheep will not break out, I will take them out.' And he said, 'I will advise you not to take the sheep out.' I said, 'What will you do with the sheep?' 'I will take care of them,' he says, 'and dip them twice and turn them over to you clean, so you can put them in your herd and go any place with them.' Q. I will ask you to state whether or not at that time Mr. Woodland told you he had scab in his sheep?'' Appellant's counsel objected to this question on the ground that ''it was not alleged in the complaint that the defendant knew or had reason to know that his sheep had the scab, also because the question is leading.'' The court overruled the objection and the witness answered: ''Mr. Woodland told me that he had scab and had had it for some time, and directed me to leave them in there and he would dip them twice and turn them back to me.'' There was no error in this ruling of the court. The evidence was material to respondents to establish a reason for leaving their sheep with appellant's. It is also shown by this evidence that appellant not only knew at the time of the mix-up that his sheep had the scab, but had known it for sometime prior thereto, and this evidence is in no wise contradicted. This being true, appellant should have been unusually diligent in holding his sheep on his feed grounds and especially keep them from passing through the fence upon the highway where clean sheep were likely to be driven at any time.

Errors are assigned, based on the instructions given the jury and the refusal of the court to give certain requests of appellant. We have carefully examined the instructions given by the court, and in our view of the case we think they fully state the law. We find no error in the record and the judgment is affirmed with costs to respondents.

Ailshie, J., and Sullivan, J., concur.