[No. 10926.  Department One.  March 18, 1913.]

C. P. Farrar, *Respondent*, v. Peterson & Company, *Appellant*.[1]

Animals—Damages—Placing Diseased Animals on Premises of Another—Knowledge of Owner. The owner of a horse affected with glanders is not liable for damages resulting from placing the animal in the barn of another, by permission, the public authorities afterwards destroying the barn, where notice that the horse was diseased could not be imputed to him.

Trespass—Acts Constituting. The placing of a horse affected with glanders in the barn of another, under a permission to use the barn for horses that had been injured in grading work, is not a trespass.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered September 14, 1912, upon findings in favor of the plaintiff, in an action of tort, after a trial to the court.  Reversed.

*Herchmer Johnston*, for appellant.

*Earle & Steinert*, for respondent.

Parker, J.—This is an action to recover damages which the plaintiff alleges resulted to him from the defendant's placing in the plaintiff's barn a horse afflicted with the contagious disease called glanders, and thereby causing the barn to become so infected that it was destroyed by the public authorities.  A trial before the court without a jury resulted in findings and judgment in favor of the plaintiff in the sum of $226.50, from which the defendant has appealed.

Appellant had a street grading contract with the city of Seattle, upon which he was working a large number of horses. The respondent had a corral and barn near where this work was being carried on; and at the request of appellant's foreman, permitted their use, to place a few of the horses in.  It

[1]Reported in 130 Pac. 753.

is evident that the purpose on the part of the foreman was to
have a suitable place in which to put such of the horses as
might become injured upon the work, or otherwise tempo-
rarily incapacitated. Respondent alleges in his complaint
that permission was given to the foreman to occupy the
corral, "and including a barn thereon, for the purpose of
permitting certain alleged injured horses to run therein and
to be sheltered in said barn." The substance of all of the evi-
dence given in behalf of the respondent tending to show any
agreed restricted use of the barn is contained in his own testi-
mony as follows:

"Q. State to the Court the circumstances of this permis-
sion to use that barn? . . . A. He [the foreman] said he
would like to have the use of the barn for three or four horses
and wanted the barn so in case it should rain they could go
under cover. Q. Did he refer to any special horses? A.
No. Q. What did he say was the matter with the horses?
A. Well, he said the horses had been hurt on the grading.
. . . . Q. To whom did you give that permission to use
the barn? A. Mr. Espeland. Q. What was his position
with the company? A. He was foreman."

On the following day, about July 1, 1911, one of the horses
became indisposed, "off his feed," as termed by some of the
witnesses, but apparently not seriously ill. It was then placed
in respondent's corral and barn. It is not alleged in the
complaint, nor is there any evidence whatever tending to
show, that any of the officers or servants of appellant had any
knowledge or reason to believe that the horse at that time was
afflicted with glanders. About a week later, the horse not
improving, a veterinary surgeon was called to attend it, and
even then the surgeon did not discover that the horse was
afflicted with glanders. A few days thereafter it was so dis-
covered, when the barn was quarantined by the public au-
thorities, and a short time thereafter the public authorities,
deeming it impractical to disinfect the barn, caused it to be
burned, resulting in plaintiff's damage for which he seeks re-
covery from appellant. Not only is there no allegation or

proof of knowledge which could be imputed to appellant. that the horse was afflicted with glanders when placed in the barn, nor for more than a week thereafter, but there is quite convincing affirmative evidence that appellant had no such knowledge.

An examination of the authorities convinces us that the undisputed facts shown by this record do not render appellant legally liable for respondent's damage resulting from the destruction of his barn. This court has had occasion to consider the question of damages resulting from the acts of vicious animals, and in each case where damages were awarded against the owner of such animals, the actual or imputed knowledge of the owner, of the vicious propensities of the animal was regarded as one of the controlling facts fastening liability upon such owner. *Robinson v. Marino,* 3 Wash. 434, 28 Pac. 752, 28 Am. St. 50; *Lynch v. Kineth,* 36 Wash. 368, 78 Pac. 923, 104 Am. St. 958; *Harris v. Carstens Packing Co.,* 43 Wash. 647, 86 Pac. 1125, 6 L. R. A. (N. S.) 1164.

It seems to us the principle here involved is the same, and so recognized by the authorities. 2 Cyc. 333, 368. In the case of *Hawks v. Locke,* 139 Mass. 205, 1 N. E. 543, 52 Am. Rep. 702, Justice Holmes, speaking for the court, in discussing the liability of owners of diseased animals for damages resulting from the placing of such animals by permission on the property of another, said:

"No decision, so far as we know, has gone further than to hold persons' answerable if they knew that the animals were diseased, which neither the defendant nor his agents did in the case at bar."

In an exhaustive note to *Hurst. v. Warner,* 47 Am. St. 551, the learned editor, after reviewing numerous cases, observes:.

"It must be remembered that in all these cases knowledge of the condition of the diseased animals was brought home to their owner; and he cannot be held answerable where this

knowledge did not exist, except perhaps where its absence could coexist only with gross inattention to his business and property. Even when the right to recover is founded on a statute forbidding the driving of diseased animals through any part of the state, and declaring that any person violating the statute shall be liable to any person injured for all damages that may arise from the communication of the disease, it has generally been held that the plaintiff must fail unless the defendant knew, or by the exercise of reasonable diligence should have known, of the existence in his animals of disease or of their capacity to communicate disease to others."

The comparatively recent decision of the supreme court of Idaho in *North v. Woodland,* 12 Idaho 50, 85 Pac. 215, 6 L. R. A. (N. S.) 921, is in harmony with this view. See note on page 922, to the same case in 6 L. R. A. (N. S.). We are of the opinion that the failure to allege or prove knowledge, or facts showing imputed knowledge, on the part of appellant, that the horse was afflicted with glanders until after the cause of respondent's damage had occurred, rendered the judgment of the trial court erroneous. It seems to us this— one of the principal controlling facts to sustain appellant's liability—is clearly wanting in this case.

Some contention is made that appellant is liable upon the ground of trespass, upon the theory that the placing of the horse in the barn of respondent, which was not injured but otherwise afflicted, was a trespass. But we think, taking respondent's own version of the contract or permission, it does not show that there was any agreement or understanding that the use of the barn was to be thus restricted. We think, therefore, that the placing of this horse in the barn was not a trespass.

The judgment is reversed, with directions to the trial court to dismiss the action.

CROW, C. J., CHADWICK, GOSE, and MOUNT, JJ., concur.

ON REHEARING.

[Decided July 16, 1913.]

PARKER, J.—This case was by mistake placed upon our calendar for the January term of this year, and called for argument in due course on January 30th. No counsel appearing at that time, we assumed that none desired to be heard orally. We thereupon treated the cause as submitted upon the briefs then on file. Thereafter the case was decided and an opinion filed March 18th.

Thereafter a petition for rehearing was filed upon the ground that counsel were deprived of oral argument by the cause being erroneously placed on the January calendar. Rehearing was accordingly granted, and the case orally argued during the present term. We regret that counsel were thus deprived of oral argument before we announced our decision. However, we have again carefully reviewed the questions presented, in the light of the oral argument and additional briefs, and conclude that the judgment of the trial court must be reversed and the case dismissed for the reasons stated in our opinion filed on March 18.

It is so ordered.

GOSE, MOUNT, and CHADWICK, JJ., concur.