274 P.2d 998

Theo DANIELS, Plaintiff-Respondent,

v.

Jim CAMPANELLO and Lena Campanello, Defendants-Appellants.

No. 8125.

Supreme Court of Idaho.

Oct. 7, 1954.

Jones, Pomeroy & Jones, Hugh C. Maguire, Jr., Pocatello, for appellants.

476

Zener & Peterson, and Clark, Holladay & Caldwell, Pocatello, for respondent.

GIVENS, Justice.

March 25, 1952 appellant Lena Campanello, daughter of appellant Jim Campanello, consigned to and sold seven pigs to respondent through the Idaho Livestock Exchange, Inc., livestock commission merchants of Pocatello, Idaho. Two of the purchased pigs died the next day and four, and possibly all five, within ten days thereafter.

Respondent thereupon sued appellants on the theory appellants knew the pigs had enteritis when sold and, therefore, were liable for the value of the seven pigs and also for some sixteen other pigs which he contended were infected by the purchased pigs, resulting in their death, amounting to $770.82 actual damages and $1,000 punitive damages.

Appellants, in their appeal from the judgment on the jury's verdict in favor of respondent for $500 actual damages and no punitive damages, contend the evidence is insufficient to support the verdict in that it did not show appellants knew the pigs had enteritis, or they were so infected when sold; and Jim Campanello had given the pigs to Lena some two weeks before the date of the sale, had no interest therein and, therefore, was not liable in any event as they were Lena's pigs, were sold by her and the proceeds belonged to her alone; and urge the court erred in refusing appellants' requested Instruction No. 3.

The basis of the delict for cause of action in favor of respondent is the claimed violation of Section 25–213, I.C., which, as material here, provides:

"It shall be unlawful for any person, firm or corporation, agent, or employee thereof, knowingly to sell, offer to sell, or in any manner to part with to another, any animal affected or infected with any contagious or communicable disease, * * *."

By Section 25–219, I.C., a violation of this statute is made a misdemeanor.

██ Conceding Jim Campanello gave, from some sixty pigs on his place, seven pigs to his daughter, she did not select them and they were not segregated and turned over to her until the day of the sale; thus, even though a gift, Jim Campanello on that day parted with the animals to his daughter, who hauled them in his truck to the sales yard, with his knowledge, and if at that time the pigs had enteritis and they both knew it, or should reasonably have known it, both would be liable for damages. North & Douglas v. Woodland, 12 Idaho 50, 85 P. 215, 6 L.R.A.,N.S., 921.

Dr. Hill, a veterinarian, testified he was at the Campanello place March 21 and 22 and he was called upon by Lena Campanello to look at some pigs, which he did and concluded they had enteritis, and he so told appellants.

"Q. And what did you do? A. Well, we autopsied this hog to see what the cause of death was, and we found all the tell-tale signs of hemorrhagic enteritis and inflammation of the mucuous lining in the stomach down to the iliocecal valve.

"Q. And did you find then that this hemorrhagic enteritis was the approximate cause of this pig's death? A. Yes, sir.

"Q. Did you discuss this condition with the gentleman that was there at that time? A. Yes.

"Q. And you told them what was wrong with these pigs? A. Yes.

"Q. And did you ask them where these pigs came from? A. I don't know that I asked them, but I heard where they had come from.

"Q. Where was that? A. Well, it was,—one of them said that they had gotten the hogs through the ring, that were sold by Campanello's. That is my only recollection of that.

"Q. And did you tell them that you had been to Campanello's place prior to this time? A. Yes, sir.

"Q. And did you tell them at that time that these pigs were,—the pigs at Campanello's had enteritis? A. Yes, sir.

"Q. Did you tell them that you had told the Campanello's that their pigs had enteritis? A. I don't recall if I actually told them that I had,—I don't know.

"Q. Did you find when you examined the pigs at Campanello's that their pigs had enteritis? A. Apparently; yes.

"Q. Doctor, you say you were out to Campanello's to treat a horse, I believe? Isn't that right? A. Yes, sir.

"Q. And that was on the seventeenth of March, did you say? A. No; that was on the twenty-first and twenty-second.

"Q. You had nothing to do with any pigs at that time? A. Well, I don't know. As I recall, I was treating some animals, either calves or a horse, and Miss Campanello asked me what was wrong with some hogs that were over in a corral, and all I did was to walk over and look at them, and see the signs of a bloody discharge, and I don't recall any more about it than the fact I just told them what it was."

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. Now, so far as you know, Doctor, those pigs you say you saw at Campanello's could have had an excessive amount of salt in their diet which could have caused the condition you saw; isn't that true?

"A. All I called it was a hemorrhagic enteritis, and that is all I saw."

Dr. Hayden, another veterinarian, for appellants, testified on cross-examination:

"Q. Did you make any other examination other than just walked by the pen? A. We are required merely to inspect these pigs, look at them.

"Q. I see. So if these pigs were diseased at that time, and as you have stated in response to Mr. Maguire's question, as to how enteritis acts,—in one pig it may be very serious, and in the next pig you may not see any symptoms, and yet it dies; isn't that your testimony? A. That is right.

"Q. And so that this pig, or several of these pigs, at the time that you examined them could have had enteritis and you would not know about it at the time you made your examination; is that correct? A. That might be possible."

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. Now, all of the times you were there, (Campanello's) Doctor, did you examine pigs? A. No.

"Q. So they didn't even call you to examine any pigs during the month of March, did they? A. No."

There was extensive cross-examination as to the date when Dr. Hill saw these pigs, which he concluded had enteritis; whether it was March 21 and 22, or in April, or whether there were other pigs he saw later which were sick and for which he prescribed and they recovered, but didn't have enteritis and were not sold on the 25th. Also, there was contradictory and conflicting testimony by Dr. Hayden and Lena Campanello as to whether the pigs purchased had enteritis; if so when, where, and how contracted, and what appellants knew or should have known as to the pigs being sick.

There was further testimony to the effect the pigs which Dr. Hill later saw were cured by medicine prescribed by him, which would not have happened if the pigs had had enteritis, from which the jury could consider the pigs that had enteritis were

seen on March 21 and 22 and not in April, and were the ones sold March 25.

While the testimony on direct and cross examination is somewhat conflicting and confusing and different inferences and conclusions could be drawn therefrom, there was sufficient evidence to justify the jury in finding and concluding the pigs had enteritis at the time of the sale and the Campanellos knew this and that six, at least, died from enteritis and the other sixteen lost by respondent were infected from these six and damages thus suffered in the amount found. Cheesman v. Felt, 92 Kan. 688, 142 P. 285; Germann v. Page, 135 Kan. 276, 10 P.2d 830.

These conflicts were for the jury and not us, to resolve. Webster v. McCullough, 45 Idaho 604, at page 609, 264 P. 384; Mitchell v. Atwood, 55 Idaho 772, at page 774, 47 P.2d 680.

"* * *; and, conceding, further, a conflict in the evidence and inconsistencies in the testimony of plaintiff himself, it was the duty of the court, so far as possible, to reconcile such conflicts and inconsistencies, and in determining the weight thereof it might accept plaintiff's evidence in part and discredit it in part." Ingram v. Johnston, 38 Cal.App. 234, 176 P. 54, at page 56.

"It is true that the testimony of these witnesses appeared to be inconsistent in some particulars with declarations they made previously to the trial and while their depositions to be used in the trial of this case were being taken. Whether these inconsistencies were due to the fact that the witnesses, who are foreigners, apparently uneducated, and with but little experience in the use of the English language, were unable to grasp clearly the significance of the questions propounded to them, or because the several transactions to which they testified did not occur as they sought to make it appear that they occurred, it is difficult for a court of review to determine. Counsel for the plaintiff seem to assume that the very fact of the inconsistencies to which we have referred is sufficient to stamp their testimony as inherently unbelievable. This is, however, not a sound assumption. It may be that there were some statements made by the witnesses that were not strictly in accord with the truth, but it does not necessarily follow that, because the testimony of a witness may not be consistent in all its parts, or that there may be some particulars as to which he may have departed from the truth, the testimony of such witness is to be held earmarked as intrinsically untruthful. It was for the trial court in this case to analyze, sift, and weigh the testimony according to those tests which are peculiarly available to trial courts and to determine whether, in the main, the testimony of such witnesses is entitled to

credence and is sufficient to justify findings upon the vital issues either one way or the other, and where this is done upon evidence, which, upon its face, is sufficient to support the conclusion of the trial judge as to the facts, such findings are conclusive upon reviewing courts. * * * But it was for the trial court to determine whether said circumstance did or did not weigh against or detract from the probative value of the testimony of both defendants, not contradicted by an affirmative showing, or contradicted only in so far as the apparent inconsistencies in their testimony might be regarded as contradictory thereof, * * *." Bitsekas v. Parechanian, 67 Cal.App. 148, 226 P. 974, at page 975.

 The court instructed the jury the burden of proof was upon respondent to prove that at the time of the sale the pigs had enteritis and the Campanellos knew they had enteritis and respondent's other pigs contracted enteritis from the pigs sold, with consequent loss. The court in Instruction No. 3—

"You are instructed that if you find from the evidence that the pigs died from enteritis, before you can allow the plaintiff anything for the pigs so dying owned by plaintiff and not purchased from defendants, you must find that such pigs contracted the disease from the pigs purchased from the defendants."

gave the substance of Appellants' requested Instruction No. 3—

"You are instructed if you find from the evidence that the pigs could have died from any cause other than enteritis contracted from the seven pigs purchased by Theo Daniels, then you must find for the defendants and each of them."

Therefore, no prejudicial error resulted in its rejection.

The judgment is, therefore, affirmed. Costs awarded to respondent.

PORTER, C. J., and TAYLOR, THOMAS and KEETON, JJ., concur.