375 P.2d 704

Marvin ANDERSON, Plaintiff-Respondent,

v.

BLACKFOOT LIVESTOCK COMMISSION CO., Blaine Ramey, Doctor Harris W. Sorensen, Defendants-Appellants.

No. 9034.

Supreme Court of Idaho.

Nov. 1, 1962.

Albaugh, Bloem, Smith & Pike, Idaho Falls, for appellants.

Black & Black, R. M. Whittier, Pocatello, for respondent.

McQUADE, Justice.

This is an action by the plaintiff, Marvin Anderson, to recover damages occasioned by the death of hogs, alleged to have been

caused when the animals contracted hog cholera.

Plaintiff alleges (1) that the defendant, Dr. Harris W. Sorensen, a duly licensed and practicing veterinarian, was negligent in the inoculation and vaccination of the swine; (2) that the defendant Commission Co. sold plaintiff swine that were infected with hog cholera which caused those animals and others owned by plaintiff to sicken and die of that disease; (3) that the defendants failed to maintain the sales ring for the sale of swine in a sanitary condition as required by I.C. § 25–1712 and that this failure resulted in the losses complained of; and (4) that the defendants warranted that the swine sold plaintiff were fit and healthy, free from hog cholera, and properly inoculated and vaccinated against the disease when in fact they were not as warranted.

Defendants denied negligence on their part and assert insufficiency of proof to establish any disease was contracted through hogs purchased from the Blackfoot Livestock Commission Co.

Plaintiff, Marvin Anderson, was engaged in the business of raising hogs in 1959. On or about the first day of July, 1959, the plaintiff had about 350 hogs on his farm. Of this number, the plaintiff had obtained some from farrowing and had purchased the remainder. During the preceding month, plaintiff purchased some 121 hogs from the defendant Commission Co., and either 54 or 55 hogs from the Cache Valley Livestock Auction Company. Early in May, plaintiff purchased 5 hogs from Joe Rossi. The remaining hogs were raised by the plaintiff.

On July 3, 1959, plaintiff purchased 12 hogs, and between July 3 and July 10, he purchased 28 additional head, all from the defendant Commission Co. Plaintiff was charged by defendant Commission Co. for vaccination of all of the hogs purchased.

The record further shows that the plaintiff purchased hogs from the Cache Valley Livestock Auction Company, and paid that concern for their vaccination. The hogs purchased from Joe Rossi were not vaccinated.

Plaintiff testified that he kept hogs of different weight in different pens.

Plaintiff's testimony relating to the pens in which he placed the hogs purchased in June is not altogether clear. Plaintiff did state, however, that the hogs purchased from the defendant Commission Co., in July, were placed in the "Intermountain Pen," and that on July 17, 1959, the only hogs in that pen were those purchased from the defendant Commission Co., and hogs of similar size raised by himself.

On July 15, 1959, plaintiff noticed that 6 hogs were not up and eating—nor acting in a manner he considered normal. Later that day one of them died. By the 21st,

**70**

many more pigs were sick, with several dying between the 17th and 21st. Both plaintiff and his wife testified that they could identify those hogs, which first became sick, by their markings and that they were among those purchased from the defendant Commission Co., between the third and tenth of July.

On July 21st, plaintiff called Dr. Kershaw, a Blackfoot, Idaho, veterinarian for assistance. He was advised to bring a dead hog to Dr. Kershaw's laboratory, where an autopsy was performed. Dr. Kershaw and his associate, Dr. Glarborg went to the Anderson ranch to examine the herd. As a result of their findings in performing the autopsy on the pig brought to them, in examining the herd at the Anderson ranch, and, according to their testimony, because plaintiff told them that all of the pigs had been vaccinated for hog cholera, Dr. Kershaw and Dr. Glarborg concluded that the animals had erysipelas. They advised plaintiff to have his hogs vaccinated with erysipelas serum and fortified penicillin. This was done on the night of the twenty-first.

There is some conflict in the testimony as to whether the hogs showed any improvement immediately following the vaccinations for erysipelas, but hogs continued to die. On July 28th, plaintiff contacted Dr. Hayden, another veterinarian, and asked. him to inspect the herd. Dr. Hayden went to plaintiff's ranch and, after inspecting the animals, stated that he "had a suspicion"

the hogs might have cholera. He then contacted Dr. Schneider, Director of Bureau of Animal Husbandry of the State of Idaho, informed him of his suspicions, and requested assistance in making a diagnosis. Several veterinarians then met at plaintiff's ranch and performed several more autopsies. The veterinarians were quite certain that the animals had hog cholera and advised the plaintiff to vaccinate the hogs against cholera. This was done the following night. Plaintiff's ranch was placed under quarantine.

Plaintiff lost 241 hogs and incurred other expenses, for which he seeks reimbursement from the defendants.

At the trial of the cause, testimony by veterinarians was elicited relating to effect and interpretation of regulations issued by the Idaho Department of Agriculture regulating use of hog cholera serum, or serum and virus in sales yards. So too, testimony was adduced concerning the type of immunity obtained where a hog is vaccinated with serum as distinguished from immunity obtained by vaccination with either virus or modified live-virus. The record is undisputed that serum provides immediate immunity to a maximum of 21 days. Modified live-virus provides immunity after about 14 days and such immunity will exist about two years.

Plaintiff contended at the trial that the defendants either failed to inoculate some

hogs he purchased from the Commission Co., or they were improperly inoculated, resulting in his herd becoming infected with hog cholera. Plaintiff's theory was that the disease came from hogs purchased from the defendant Commission Co., and thereafter spread to other hogs in plaintiff's herd. His proof was calculated to establish that the first hogs to become sick were those purchased between July 3rd and 10th; that no other hogs were infected prior to that time; that the hogs purchased from the Cache Valley sales yard were not infected and they did not become sick or die during the outbreak of hog cholera; that the hogs purchased from the Rossi farm were disposed of prior to the outbreak of hog cholera on plaintiff's farm; and that defendants had either improperly inoculated the hogs or had not inoculated them at all.

At the conclusion of the trial, the jury rendered two verdicts, one verdict for the plaintiff and against the defendant Commission Co. in the sum of $2,258.57, and a second verdict in the sum of $2,258.57 for the plaintiff and against the defendant Dr. Harris W. Sorensen. Defendants appeal from the judgment entered on the verdicts.

Defendant Commission Co. assigns error of the trial court in refusing to grant its motion for a directed verdict on grounds of insufficiency of the evidence. In support thereof this defendant asserts that the plaintiff failed to prove agency between the veterinarian and the Commission Co., and failed to prove any duty, or violation of duty, on the part of the Commission Co. in the vaccination of the hogs, or that the violation of duty, if any, was the cause of hog cholera in the hogs.

Some of the duties that the Commission Co. owed to the plaintiff arose, in this case, by force of regulations issued by the Director of the Bureau of Animal Industry, pursuant to statutory authority of the Commissioner of Agriculture. The regulation, as modified October 1, 1958, in pertinent part is as follows:

"* * * The following is the regulation governing the treatment of swine against Hog-Cholera at sales yards and their release. * * *

"It is the intent that the use of modified live-virus vaccine comes within the meaning of this regulation.

*"Regulation No. 168*

"To: Deputy State Veterinarians, Sales Yards, Stockyards, Hog Pool, and Auction Sales Yards:

"This is to inform you that effective today, August 14, 1947, the Idaho Bureau of Animal Industry is revising the regulation on swine to read as follows:

"All swine in any stockyards, salesyards, hog pools, or auction sales yards sold except for immediate slaughter

shall be treated for hog-cholera. Treatment shall be a protective treatment by either serum or serum and virus.

"The use of serum and virus should only be used upon the advice of the owner and his veterinarian.

"All pens, wherein swine are held prior to or after their sale, must be thoroughly cleaned and disinfected between sale days.

"Swine may be released without treatment at the yard when permission is obtained from the Deputy State Veterinarian in charge of vaccination at said sales yards when such animals are to be treated under official supervision on the home ranch or in other cases that are deemed advisable by the Deputy State Veterinarians."

■ This Court has long been committed to the following rule on review of appeals from a denial of a trial court to grant a motion for a directed verdict:

"The rule, we think is that in a motion for nonsuit or directed verdict the evidence must be construed in the light most favorable to plaintiff. It is only where there is an entire absence of testimony tending to establish the case that a nonsuit may be properly ordered or a directed verdict granted. Where the question depends on a state of facts from which different minds may honestly draw different conclusions on that issue the question must be submitted to the jury for determination. Where facts are disputed or inferences therefrom are reasonably disputable, the question is one for the jury." Hobbs v. Union Pacific R.R. Co., 62 Idaho 58, 108 P.2d 841; Claris v. Oregon Short Line R.R. Co., 54 Idaho 568, 33 P.2d 348; Allan v. Oregon Short Line R. Co., 60 Idaho 267, 90 P. 2d 707.

■ For the purposes of considering the motion for a directed verdict, "The party making the motion admits the truth of his adversary's evidence, and his adversary is entitled to the benefit of every inference favorable to him which may be drawn legitimately from any evidence before the court at the time the motion is made." Manion v. Waybright, 59 Idaho 643, 86 P.2d 181; Hobbs v. Union Pacific R.R. Co., 62 Idaho 58, 108 P.2d 841.

■ Applying the foregoing rule we think there is sufficient evidence to justify a denial of defendant's motion for a directed verdict.

The regulations require that all swine in salesyards that are sold, except for immediate slaughter, shall be treated for hog cholera and that this treatment shall be a protective treatment by either serum or

serum and virus—the latter to be used only upon the advise of the owner. It is further provided that the use of modified live-virus comes within the meaning of this regulation. Dr. Schneider, Director of Bureau of Animal Husbandry for the State of Idaho, testified that "the department never amended the regulations to say that you could use serum, serum and virus or modified live-virus—we never said that, we said for you to use serum or serum and virus, and then you would have the option under the serum and virus that you could use serum and virus or serum and modified live-virus; and to my knowledge there is no sales yards or no state that is operating sales yards under State license (sic.) where modified live-virus is given by itself. * * *." He further stated that the regulation required the use of serum because immediate protection against hog cholera is the purpose sought to be achieved through these regulations because sales yards are considered to be "exposed places." Defendant, Dr. Sorensen, testified that he used modified live-virus alone.

There was testimony by Elmer Stecklein and Don Keith Lloyd to the effect that the defendant, Dr. Sorensen, had stated that he was not sure that he had vaccinated all hogs purchased by the plaintiff between July 3 and 10, 1959.

█ That the regulations imposed a duty on the part of the defendant Commission Co. to vaccinate or inoculate hogs in compliance therewith, cannot be questioned. The fact that this defendant did not itself commit the acts or omissions with which we are here concerned does not relieve it from responsibility imposed by the regulations.

"In an action for injury alleged to be due to a neglect of duty on the part of the defendant, it is no defense that a similar duty rested upon another person. One upon whom the law devolves a duty cannot shift it to another, so as to exonerate himself from the consequences of its non-performance. Thus one upon whom the law has imposed a duty of care cannot avoid his responsibility for its faithful discharge by contracting with another for its performance. Accordingly, the right of one to receive care from another in the performance of a service is not ordinarily lost by the delegation to others of the performance of the service. * *." 38 Am.Jur., Negligence, § 13.

█ Appellants do not complain of that portion of Instruction No. 20, as given by the court, which provides as follows:

"You are instructed that the violation of a statute or regulation made by a State Agency under authority of statute, intended for the protection of a person and others like situated, which

results in his injury and is the proximate cause of it, is negligence per se * * *."

The instruction sets out the established rule in Idaho; Carron v. Guido, 54 Idaho 494, 33 P.2d 345; Curoe v. Spokane, etc., R. R. Co., 32 Idaho 643, 186 P. 1101, 37 A.L.R. 923; Smith v. Oregon Short Line R. R. Co., 32 Idaho 695, 187 P. 539. Regulations and orders enacted by administrative authorities pursuant to statutory authority having the force and effect of law come within the above rule. Probart v. Idaho Power Co., 74 Idaho 119, 258 P.2d 361; State ex rel. McKinney v. Richardson, 76 Idaho 9, 277 P.2d 272; 42 Am.Jur., Public Administrative Law, § 102, page 432; 25 Am.Jur., Health, § 5, page 289.

The controlling question presented in this case is whether after finding that the defendant had violated the duty imposed upon it by the regulations, such a violation was the proximate cause of the damage complained of.

The plaintiff sought to meet much of the burden of establishing proximate cause in this case by what is called negative inference. He sought to show that the source of the disease was the defendant Commission Co. by introducing testimony designed to prove that the disease did not come from any of the other sources. Testimony was given to the effect that hogs purchased from the Cache Valley Livestock Commission Co. did not contract the disease and that none of those hogs died; that the hogs purchased from Joe Rossi were sold by the plaintiff prior to the outbreak of the disease on plaintiff's farm; that the plaintiff had no previous sickness among his hogs due to hog cholera; and that the first hogs to become sick were those last purchased from the defendant Commission Co. Veterinarians testified that swine inoculated with modified live-virus could communicate cholera to other swine. Plaintiff sought to support his cause of action by adducing testimony from Elmer Stecklein, who testified to the effect that hogs he purchased from the defendant also sickened and died from hog cholera.

There is some conflict in the testimony. The defendant contends that plaintiff did not prove the animals had hog cholera. There is a preponderance of proof the animals in fact did have cholera. That there may be a conflict in the testimony whereby the jury could have arrived at a different verdict is not in itself enough to justify a refusal to submit the case to the jury for their determination.

"The question of proximate cause is almost always a question for the jury. It becomes a question of law only where the facts are agreed upon and are not in dispute." Bateman v. Crum, 186 Kan. 1, 348 P.2d 639.

In Mason v. Hillsdale Highway Dist., 65 Idaho 833, 154 P.2d 490, this court stated as follows:

"The rule derived from the following cases is that negligence, contributory negligence, and proximate cause are questions for the jury unless the proof is so clear that different minds cannot reasonably draw different conclusions or where all reasonable minds would construe the facts and circumstances of the case in only one way. Wheeler v. Oregon R. & Nav. Co., 16 Idaho 375, 102 P. 347; Cooper v. Oregon Short Line R. Co., 45 Idaho 313, 262 P. 873; Pipher v. Carpenter, 51 Idaho 548, 7 P.2d 589; * * * Carson v. Talbot, [64] Idaho [198] 129 P.2d 901; Dawson v. Salt Lake Hardware Co., 64 Idaho 666, 136 P.2d 733; Stallinger v. Johnson, [65] Idaho [101] 139 P.2d 460."

██ Considering all of the evidence, we are of the opinion that the jury could reasonably have concluded that the animals did have hog cholera and that the outbreak of this disease was proximately caused by the defendant's violation of the duties imposed upon it by the regulations of the Bureau of Animal Industry.

██ The Commission Co. further contends that the court erred in denying it's motion for a directed verdict on the grounds that respondent "wholly failed to prove the amount of his damages, which were all special damages." This contention is without merit, for there is ample evidence of the value of the hogs that died and of other expenses to support the verdict. Therefore, the trial court did not err in denying appellant's motion for a directed verdict.

██ Appellant, Dr. Sorensen, assigns as error the refusal of the trial court to grant his motion for a directed verdict on the grounds that the evidence is insufficient to prove a claim for relief. In addition to the contentions that respondent failed to prove (1) negligence or violation of the directives of the Department of Agriculture; (2) that violation of duty, if any, proximately caused cholera in the hogs, if any; (3) warranty, as set out in the complaint; (4) any duty on the part of the appellant with respect to the sanitation of the sales ring; and (5) that respondent failed to prove the amount of his damages; appellant further contends that he was acting as a public official in the vaccination or inoculation of hogs and that while acting in such capacity, he cannot be held liable for his acts unless it is shown that the acts are done maliciously, fraudulently or corruptly.

The basis for the contention that Dr. Sorensen was acting as a public official lies in the fact that he was a Deputy State Veterinarian and because the State of Idaho paid him a fee to be present at the salesyard. According to the testimony of Dr. Schneider, Director of the Bureau of Animal Industry, all of the licensed veterinarians in Idaho are Deputy State Veterinarians. Dr.

Schneider further testified that the compensation paid to veterinarians is not for vaccination of animals, but is paid to make certain that a veterinarian will be present at the sales yards in the event his services are needed. He further testified that the fees to be charged for vaccination or inoculation were set by the veterinarian because this was a private service, rather than a public service rendered by the veterinarian, and that the state did not in any way regulate the amount of the fee or the manner in which it was to be collected. The State of Idaho did not assume the responsibility of treating the hogs for hog cholera—rather it charged the sales yards with this responsibility. The fee to be charged for vaccination of the hogs was established by the veterinarian. The means by which the fee was collected from the purchaser was established by an agreement between the veterinarian and the sales yard. All of the above facts point to the logical conclusion that in undertaking to vaccinate or inoculate hogs at the sales yard, the appellant, Dr. Sorensen, was acting not as a public official, but in a private capacity and for private gain. It was not error to deny the appellant's motion for a directed verdict based on those grounds.

 When Dr. Sorensen undertook the task of vaccinating plaintiff's hogs, he was under a duty to comply with the regulatory requirements. Failure to comply with the regulations constitutes negligence per se.

Probart v. Idaho Power Co., supra; State ex rel. McKinney v. Richardson, supra. As has been stated previously in this opinion, there is ample evidence from which the jury could find a violation of the regulations and consequent violation of a duty owing to the plaintiff by Dr. Sorensen.

The discussion earlier in this opinion of the question of whether failure to comply with the regulations was the proximate cause of the injuries complained of by the plaintiff applies with equal force to both defendants. Therefore, it was not error to submit this question to the jury.

The assignment of error dealing with proof of special damages has been previously dealt with and need not be reconsidered.

 Appellants contend the evidence is insufficient to support the verdict of the jury. Heretofore we have pointed out that the plaintiff has met the burden of presenting sufficient evidence of a probative value to justify submitting the case to the jury. Defendants then presented their case. While the defendants' evidence is in conflict with that presented by the plaintiff, yet, it does not overcome the plaintiff's evidence to the extent that the trial court should have ruled as a matter of law that there was insufficient evidence to support the jury's verdict. Conflicts are for the jury, and not this court, to resolve. Daniels v. Campanello, 75 Idaho 475, 274 P.2d 998; Webster v. McCullough, 45 Idaho 604, 264 P. 384;

Mitchell v. Atwood, 55 Idaho 772, 47 P.2d 680. Where evidence is conflicting and there is substantial evidence to support the verdict, it will not be set aside. Boomer v. Isley, 49 Idaho 666, 290 P. 405; Mitchell v. Atwood, supra; Daniels v. Campanello, supra; Van v. Union Pacific Railroad Co., 83 Idaho 539, 366 P.2d 837. There is ample evidence from which the jury could have found as it did; therefore this court will not disturb the jury's verdict.

■ Appellants assign as error the refusal of the trial court to give Defendants' Requested Instruction No. 7. This instruction was designed to instruct the jury on the law governing liability of a public official. As previously stated, defendant, Dr. Sorensen, was not acting in the capacity of a public official in connection with the vaccination of the hogs purchased by the plaintiff. Therefore, it was unnecessary to instruct the jury on the law governing liability of a public official and the refusal to give this requested instruction was not error.

■ There is no merit to appellants' claim that the giving of instructions Nos. 14 and 18 was error. Instruction No. 14 advises that "the mere keeping of swine having an infectious disease does not in and of itself make the defendant, Blackfoot Livestock Commission Co., liable to the plaintiff, unless the plaintiff proves by a preponderance of the evidence that the defendant, Blackfoot Livestock Commission Co., knew the swine were diseased and further, were guilty of some negligence in the manner of keeping the swine in question that was the proximate cause of the injuries sustained by the plaintiff for which he seeks to recover damages." This instruction was requested by the defendants and is identical with Defendants' Requested Instruction No. 5. Because the instruction was given upon the request of the appellants, the error, if any, was invited by the appellants and they cannot be heard to complain of it. State v. Johnston, 61 Idaho 87, 98 P.2d 628; State v. Orr, 53 Idaho 452, 24 P.2d 679; Neff v. Hysen, 72 Idaho 470, 244 P.2d 146.

■ Appellants complain that the portion of instruction No. 18, related to the regulations dealing with the use of serum or serum and virus in sales yards, was inset and that quotation marks were used, whereas the part of the 1948 regulations dealing with the use of modified live-virus was not accorded such treatment. This, the appellants contend, constitutes reversible error, notwithstanding the fact that it is admitted that the instruction properly states the regulation. In view of the fact that copies of the regulations were in evidence and available to the jury, this would not amount to prejudicial error.

■ Appellants further complain that the court erred in giving instruction No. 20 in that the jury was left to interpret the meaning of the directives of the Department

of Agriculture. Instruction No. 20 states as follows:

"You are instructed that the violation of a statute or regulation made by a State Agency under authority of statute, intended for the protection of a person and others like situated, which results in his injury and is the proximate cause of it, is negligence per se. However, this is for the jury to determine by a preponderance of all the evidence."

This assignment is without merit. The purpose of this instruction was to instruct the jury as to the law concerning violation of statutes and regulations and to inform them that the questions of whether the statute was violated and whether the violation resulted in and was the proximate cause of the plaintiff's injuries are questions which the jury must determine.

■ Appellants contend that the court erred in giving instructions Nos. 21 and 22 in that the instructions do not state the law governing the liability of agents of the state of Idaho, or public officials. It has been decided earlier in this opinion that Dr. Sorensen was not acting in the capacity of a public official in connection with the vaccination of the hogs sold to the plaintiff. Therefore, it was not necessary that the instructions given the jury embrace the law of liability of agents of the state of Idaho or of public officials.

■ Appellants complain that the court erred in giving instruction No. 25 in that the instruction did not state the law in a case where the issue is whether the hogs are free and immune from hog cholera. Instruction No. 25 provides as follows:

"You are instructed that where a buyer of swine expressly or by implication makes known to the seller the particular purpose for which he is buying the swine and it appears that the buyer relies on the skill or judgment of the seller, then there is an implied warranty that the swine shall be reasonably fit for the buyer's purpose. In other words, where a buyer relies on a seller to furnish swine which have been inoculated against hog cholera and relies on the seller's skill and judgment that said swine will be fit for his purpose, of raising and reselling the swine, then there is an implied warranty that the swine are reasonably fit for such a purpose."

The first sentence is a paraphrasing of I.C. § 64–115. The second sentence is merely a restatement of the first sentence in a manner that applies the instruction to the facts of the case. Plaintiff, in his complaint, alleges as a third and alternative cause of action that the defendants warranted the fitness of the swine sold to the plaintiff and that they had been properly vaccinated. Plaintiff then introduced evidence which, if believed,

would support these claims. There was testimony to the effect that Dr. Sorensen had stated that he was not certain that he had vaccinated all of the swine sold to the plaintiff. The defendants contend that they vaccinated all of the swine with modified live-virus alone and not with serum as prescribed by the regulations.

To contend that the instruction is erroneous because the issue is whether the hogs are free and immune from hog cholera, is erroneous itself. That the vaccination of hogs does not constitute a warranty, implied or otherwise, that the hogs are completely protected from hog cholera, is not denied by the respondent here. Instruction No. 23, as given by the court, so instructed the jury. It provides as follows:

"You are instructed that there is no implied warranty to the buyer against the swine having hog cholera, * * *."

Though the quoted portion of instruction No. 23 is in a sense inconsistent with the law as given in instruction No. 25, it was favorable to the appellants.

Appellants' remaining assignments of error are grounded on the contention that the verdicts are erroneous and contrary to law. The jury found for the plaintiff and against each of these appellants and assessed damages against them in the amount of $2,258.57 each. No objection was made to the form of the verdicts. Judgments were entered thereon. Appellants now contend that separate verdicts cannot be entered against joint tort feasors and that the court committed reversible error in entering judgments on the separate verdicts.

It should be noted that the record contains evidence of damages in an amount that would support the verdicts. The amount of losses that plaintiff testified he had suffered exceeded the amount of both verdicts. Therefore, the objection made by appellants goes to the form and not the substance of the verdicts.

Failure to object timely to the form of a general verdict constitutes a waiver of the objection. Judd v. Oregon Short Line R. R. Co., 55 Idaho 461, 44 P.2d 291; Pilkington v. Belson, 66 Idaho 724, 168 P.2d 815.

Although there may have been error in receiving the verdict which apportioned between the defendants the liability for their joint wrong, appellants may not now be heard to complain. "It is too late to raise the question for the first time on motion for a new trial or on appeal." Boomer v. Isley, 49 Idaho 666, 290 P. 405.

The judgment is affirmed.

Costs to respondent.

SMITH, C. J., and TAYLOR, KNUDSON and McFADDEN, JJ., concur.