604 P.2d 707

**Les McNEIL and Diann McNeil, husband and wife, Plaintiffs-Appellants,**

v.

**Joe GISLER, dba G & G Mfg. and Sales Company, Defendant-Respondent.**

No. 12887.

Supreme Court of Idaho.

Oct. 23, 1979.

Rehearing Denied Jan. 21, 1980.

James T. Jones, Jerome, for plaintiffs-appellants.

Roger D. Ling, Rupert, for defendant-respondent.

BISTLINE, Justice.

On June 15, 1976, the plaintiffs (McNeils) purchased a Beachcraft boat, Mercury motor and a trailer from defendant (Gisler). On July 21, 1977, McNeils brought this action seeking to rescind the transaction under I.C. § 48–603 of the Idaho Consumer

Protection Act (Consumer Protection Act). The pertinent parts of the Consumer Protection Act state:

"The following unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared to be unlawful, where a person knows, or in the exercise of due care should know, that he has in the past, or is:

. . . . .

"(6) Representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

"(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

. . . . .

"(14) Making false or misleading statements of fact concerning the age, extent of use, or mileage of any goods;

. . . . .

"(17) Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer."

McNeils' complaint alleged that Gisler had misrepresented to them that the boat and motor were: (1) new and had not previously been used; (2) 1976 models; and (3) of good and merchantable quality and in a good state of condition and repair.

Both parties filed motions for summary judgment. The trial court conducted a hearing and after carefully considering the supporting filings, affidavits, depositions and interrogatories, granted Gisler's motion. Judgment was entered dismissing McNeils' complaint and awarding costs to Gisler. McNeils have appealed.

McNeils contend that the trial court erred in granting Gisler's motion for summary judgment because there were genuine issues of material fact. According to Rule 56(c), I.R.C.P., a motion for summary judgment shall be granted only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Under the above rule a motion for summary judgment should be granted "whenever on the basis of the evidence before the court a directed verdict would be warranted or whenever reasonable men could not disagree as to the facts." *Petricevich v. Salmon River Canal Company*, 92 Idaho 865, 871, 452 P.2d 362, 368 (1969). When the trial court considers the evidence, "it is well recognized that the facts are to be liberally construed in favor of the party opposing the motion and he is given the benefit of all favorable inferences which might be reasonably drawn from the evidence." *Argyle v. Slemaker*, 99 Idaho 544, 546, 585 P.2d 954, 956 (1978); *Farmer's Insurance Company of Idaho v. Brown*, 97 Idaho 380, 381, 544 P.2d 1150, 1151 (1976); *Straley v. Idaho Nuclear Corporation*, 94 Idaho 917, 918, 500 P.2d 218, 219 (1972).

The trial court's memorandum decision carefully lays out the nature of the controversy and the rationale of the disposition made:

"Beachcraft Corporation markets powered boats. It makes the hulls. Into the hulls it installs motor and outdrive assembly manufactured by Mercury Marine. The completed boat is shipped to franchised dealers, together with written warranties on the hull and on the motor, Beachcraft with respect to the hull, Mercury Marine with respect to the motor and outdrive assembly.

"Around July 18, 1975, the defendant, a franchised Beachcraft dealer (sales, not service) took delivery of the boat in question. This boat's hull was manufactured in 1975; its motor and outdrive assembly was manufactured in 1976. Thereafter and until the date of sale to the plaintiffs, the defendant registered the boat and used it for water testing and for demonstration. The boat is equipped with an hour meter which activates and operates whenever the ignition key is in the on position, whether the engine is running or not.

"On or about June 15, 1976, plaintiff, Les McNeil, came to defendant's place of business and looked at the boat. At his request defendant hauled the boat on a trailer to plaintiffs' residence in Eden, Idaho, so that this plaintiff and his plaintiff wife could examine the boat.

"On one or other of these occasions plaintiff Les McNeil observed the hour meter which read 'something like say around 20 hours, roughly.' This plaintiff presumed that the boat had been operated for approximately 20 hours. The sale of the boat from defendant to plaintiffs was completed at plaintiffs' residence, and the price was $7,300, less unknown allowance for a boat trade-in. We do not know whether this price represented list price or a reduced bargained price.

"The H.I.N. (hull identification number) appears on the hull of the boat. The number includes the year the hull was manufactured. There seems to be no dispute that the hull number on this boat showed 1975 as the year of manufacture. The hull number is not in any sense an indication of Model Year as in the case of automobiles V.I.N. (vehicle identification numbers); that is to say, automobiles have definite model years and those years can be determined from a compilation of automobile identification numbers. On the other hand, boats do not have model years, only manufacture years, and the industry considers that boats are new boats until they go from the dealer to the consumer and the warranty is registered.

"The plaintiffs have possession of the boat in question to this day.

.    .    .    .    .

"During the course of plaintiffs' intermittent use of the boat between sale and suit filing dates there apparently developed timing problems in connection with the boat's motor. It seems the motor could be timed but would not hold the timing. For awhile after timing the boat performed well, that is, until the timing went off and the rpm's dropped. During this same time the plaintiffs were, and still are, concerned that they purchased a 1975 'model' when they thought they had purchased a 1976 'model.'

"On one occasion defendant suggested that plaintiffs have a mechanic take a look at the problem. This was done. Thereafter for a time the boat performed well, but again the timing went off. Plaintiffs had at least two mechanics work on the problem. These were all unauthorized mechanics, that is, were not Mercury Marine service men. Defendant at one point advised plaintiffs to take the boat to an authorized service station called Bud and Marks. The plaintiffs refused to do business with this serviceman. Later defendant made arrangements with the successors to Bud and Marks, known commonly as Lawn & Leisure, for plaintiffs to have this Mercury authorized station examine and repair the motor. However, Lawn & Leisure were under the impression the warranty on the motor had expired and it wanted its repair money which plaintiffs paid. Apparently the timing mechanism performed thereafter as before. The plaintiffs have done little about the situation since except to file this suit. About ten (10) days prior to filing suit plaintiffs offered to return the boat to defendant for a return of their purchase price. Apparently little was done by way of follow up. The trade-in boat has long since been resold by the defendant.

"By their action the plaintiffs seek:

"1. Rescission and cancellation of the purchase contract.

"2. The total purchase price plus interest and $350 expended by the plaintiffs for repairs.

"3. Punitive damages, attorney's fees and costs.

"It should be noted at this point that plaintiffs acknowledge receipt of the manufacturers warranties. Attached to the Mercury motor warranty is a suggested course of action when problems develop:

"(1) Discuss the matter with the Mercury dealership management. If not satisfied,

"(2) Contact the Mercury Branch or Distributor closest to the purchaser. (Locations and names are listed.) or,

"(3) Contact Mercury Customer Service at one or more designated locations.

"The evidence affirmatively shows the plaintiffs took none of the foregoing steps.

"For three of four years, including the year 1976, the boats of this type were identical.

"I find no evidence that the defendant dealer made any misrepresentations to the plaintiffs to induce them to purchase the boat."

■ Our review of the record leaves us with the belief that the trial court's view of the case was not incorrect. The court found on the evidence submitted to it no evidence of any conduct on the part of Gisler which entitled McNeils to a decree of rescission *under the provisions of the Consumer Protection Act.* The court accepted that there was no dispute of fact regarding the motor's timing problems which developed after the transaction was completed, noting also that there were motor warranties accompanied with a suggested course of action. McNeils' action, however, is not for breach of manufacturer's warranties, nor is it for breach of dealer's warranties, if any. Specifically the McNeils sought relief available under the Consumer Protection Act. Equally specifically the trial court held that the undisputed facts presented did not give rise to such relief.

McNeils also urge that the trial court erred in considering incompetent hearsay evidence in granting Gisler's motion. This issue was not raised in the trial court, but is raised for the first time on appeal. Neither party objected to any of the evidence which the other submitted in support of the motions.

■■ This Court has quite consistently adhered to the principle that an issue not raised below will not be considered when raised for the first time on appeal. Recently in *Sines v. Blaser*, 100 Idaho 50, 52, 592 P.2d 1367, 1369 (1979), in a like situation, we said:

"This court finds nothing in the record to indicate that either the issue of waiver or estoppel was presented to the trial court. Issues not presented to the trial court will not be considered on appeal."

Similar statements were made in *Unigard Insurance Group v. Royal Globe Insurance Co.*, 100 Idaho 123, 594 P.2d 633 (1979); *Jensen v. Bledsoe*, 100 Idaho 84, 593 P.2d 988 (1979); *Mitchell v. Siqueiros*, 99 Idaho 396, 582 P.2d 1074 (1978); *Farmer v. International Harvester Company*, 97 Idaho 742, 553 P.2d 1306 (1976); *Bair v. Barron*, 97 Idaho 26, 539 P.2d 578 (1975); *Dunn v. Baugh*, 95 Idaho 236, 506 P.2d 463 (1973). Hearsay evidence admitted without objection may properly be considered. *Fisher v. Bunker Hill Company*, 96 Idaho 341, 528 P.2d 903 (1974). Exhibits attached to affidavits also may be considered. 10 Wright and Miller § 2722, p. 484. Wright and Miller at p. 486 go on to point out: "As is true of other material introduced on a summary judgment motion, uncertified or otherwise inadmissible documents may be considered by the court if not challenged. The objection must be timely or it will be deemed to have been waived."

In *Auto Drive-Away Company of Hialeah, Inc. v. Interstate Commerce Commission*, 360 F.2d 446 (5th Cir. 1966), the defendants Auto Drive-Away attacked the admissibility of most of the materials used by the trial court in granting plaintiff's motion for summary judgment, complaining that the ICC investigator's affidavit did not clearly show his competence to testify and inadmissible exhibits accompanied his statement. In affirming, the court said:

"These objections come too late: the defendants failed to object to the introduction or use of the affidavit[s] and exhibits below. An affidavit that does not measure up to the standards of Rule 56(e) is subject to a timely motion to strike. In the absence of this motion or other objection, formal defects in the affidavit ordinarily are waived." (citations omitted) 360 F.2d at 448–449.

■ Neither party can now object that hearsay evidence may have been considered,

. no such objection having been made in the trial court.

Gisler's claim for I.C. § 12–121 attorney fees on appeal is denied. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979).

Costs to respondent.

DONALDSON, C. J., BAKES, J., and DUNLAP, J., pro tem., concur.

SHEPARD, J., dissents without opinion.