660 P.2d 46

**Susan Gardner REIS, Plaintiff-Appellant,**

v.

**George T. COX, Defendant-Respondent.**

**No. 13856.**

Supreme Court of Idaho.

Dec. 27, 1982.

Rehearing Denied March 29, 1983.

Lloyd Webb and Monte B. Carlson, of Webb, Burton, Carlson, Pedersen & Paine, Twin Falls, for plaintiff-appellant.

Wesley F. Merrill, of Merrill & Merrill, Pocatello, for defendant-respondent.

BAKES, Chief Justice.

This appeal is taken from a summary judgment entered in favor of the defendant doctor in a medical malpractice action. The action arose from the defendant respondent's alleged failure to remove a Penrose surgical drain from the plaintiff appellant's abdomen following surgery. Summary judgment was entered on the ground that the applicable statute of limitations, I.C. § 5–219(4), had run, barring plaintiff's cause of action. The primary issue to be decided on appeal is whether the trial court erred in concluding that there were no gen-

uine issues of material fact which would preclude the granting of a summary judgment, and that the defendant respondent was entitled to judgment as a matter of law because the statute of limitations had run. We find that there are disputed questions of material fact, to be resolved by the trier of fact, and reverse the order of the lower court.

The factual dispute centers on when plaintiff acquired knowledge or, by the exercise of reasonable care, should have been put on inquiry regarding her condition. On August 12, 1974, defendant respondent, Dr. George T. Cox, performed an abdominal hysterectomy on Susan Reis, the plaintiff appellant. He inserted a Penrose drain to prevent the accumulation of fluids which might hinder the healing process. Subsequently, when defendant removed the drain, an edge of the drain appeared uneven and irregular. The defendant's suspicion that a portion of the drain might remain in the plaintiff is evidenced by the following notation made on his progress report: "Drain removed. ? Some remains." The defendant, however, admitted that he made no attempt to determine whether a portion of the drain actually remained in the plaintiff. He testified that he chose not to tell plaintiff of the possibility of the remaining drain for medically sound reasons, thinking that if a portion of the drain did remain it would later manifest itself and could then be removed.

The record discloses that the plaintiff experienced recurring pain and abcesses in her abdominal area. She testified that she complained to the defendant that she felt like there was something inside of her, but that defendant ignored her complaints. Defendant, on the other hand, testified that plaintiff never complained of problems along the incisional line and that she exhibited no symptoms which would prompt him to inquire about any problems.

By early 1976, plaintiff decided not to return to Dr. Cox's care. Instead she sought medical attention from other doctors during the following months for various ailments, including pain or infection near the hysterectomy scarline. On occasion various doctors observed bulging in the incisional area, inflammation and tenderness, and generally prescribed antibiotics and heat packs for treatment.

In July, 1977, nearly three years after the surgery and while plaintiff was residing in Woodstock, Illinois, her condition worsened. Tenderness and inflammation around the area was noted by Dr. Reyes on July 14, 1977; an emergency room physician noted a skin reaction around the incisional line on July 16, 1977. Finally, on July 25, 1977, Dr. Reyes felt a lump in the front of the abdominal wall. X-rays taken at his request on July 26, 1977, showed a radiopaque mass in the plaintiff's abdomen. The object, however, was unidentifiable. Dr. Reyes testified that he felt that the mass appearing in the X-rays was an undissolved stitch and referred plaintiff to his associate, a surgeon, Dr. Abando. Dr. Abando admitted that he could not identify the composition of the mass on the basis of the X-rays alone, but suspected it to be a surgical sponge.

The record indicates that Dr. Abando contacted the defendant in Pocatello. According to the defendant's records, they had telephone conversations on July 27 and 29, pursuant to which the defendant sent plaintiff's medical records to Dr. Abando. The defendant failed to include the progress report which contained the notation concerning the possibility of a remaining Penrose drain. He testified in his deposition, however, that during their telephone conversations, he made Dr. Abando aware of the possibility of a remaining drain. Dr. Abando's testimony was that he asked whether there was any sponge count or drain left, and that defendant replied only that the sponge counts were correct. Thus, the inference can be drawn from Dr. Abando's testimony that Dr. Cox made no mention of the drain.

The trial court, in its opinion granting summary judgment, stated that "on August 3, 1977, Dr. Abando advised plaintiff that she, in fact, had a foreign object within her body which was apparently left there at the

time of the surgery performed by the defendant." Plaintiff contends, however, that the record does not disclose that Dr. Abando ever described the foreign body or object to her or that she was told that the foreign body could be attributed to the operation performed by the defendant until after the surgery.

Dr. Abando operated on plaintiff on August 12, 1977, at which time he identified the mass seen on the X-ray as a Penrose drain, encrusted in calcium. Plaintiff admits that she was advised after the operation that it had been left in her abdomen by the defendant.

Plaintiff filed for a prelitigation hearing panel with the State Board of Medicine on August 8, 1978,[1] tolling the statute of limitations, and filed a complaint charging the defendant with negligence on February 8, 1979. The defendant filed a motion for summary judgment on the basis that the statute of limitations had run. The trial court held that "the plaintiff knew or should have known of the foreign object within her body on or before August 3, 1977," and held, "as a matter of law that her failure to file for prelitigation panel until August 8, 1978, bars her recovery."

The question before us on appeal is whether the record supports the trial court's conclusion that plaintiff's claim was barred by the statute of limitations as a matter of law. I.C. § 5–219(4), the statute of limitations applicable to professional malpractice actions, provides, in relevant part:

"[W]hen the action is for damages arising out of the placement and inadvertent, accidental or unintentional leaving of any foreign object in the body of any person by reason of the professional malpractice of any hospital, physician or other person or institution practicing any of the healing arts ... *the same shall be deemed to accrue when the injured party knows or in the exercise of reasonable care should*

*have been put on inquiry regarding the condition or matter complained of; ...* provided further, that an action within the foregoing foreign object ... [exception] must be commenced within one (1) year following the date of accrual as aforesaid or two (2) years following the occurrence, act or omission complained of, whichever is later." (Emphasis added.)

Therefore, whether plaintiff's claim was barred by the applicable one year limitation period hinges on a determination of when plaintiff's cause of action accrued, or, more specifically, when plaintiff "[knew] or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of."

Plaintiff alleges that her cause of action did not accrue until August 12, 1977, the date the foreign object disclosed by the X-rays was removed from her abdomen and positively identified as a Penrose drain. Alternatively, plaintiff alleges that the question of when an injured party is put on notice of her claim is one of fact to be decided by the trier of fact.

The defendant, on the other hand, claims that the one year period began to run no later than August 3, 1977, when Dr. Abando allegedly confirmed, on the basis of the X-rays, the presence of the unidentifiable foreign object, and allegedly stated that it could be attributed to the prior surgery performed by the defendant. The defendant argues that the information learned on August 3, 1977, put plaintiff on inquiry of her claim, thus causing her cause of action to accrue. Without acknowledging the disputed testimony concerning whether Dr. Abando informed plaintiff that the foreign object was present as a result of the earlier surgery, the trial court agreed with the defendant's position, holding, as a matter of law, that the plaintiff knew or should have known of the foreign object within her body on or before August 3, 1977.

---

1. The complaint alleges and the answer admits that, "On August 8, 1978, in conformity with § 6–1001, Idaho Code, et seq., the plaintiff requested pre-litigation consideration of her per-

sonal injury claim arising from the negligence of the defendant." However, the claim may not actually have been received until August 9, 1978.

■ Summary judgment can be granted only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. I.R.C.P. 56(c); *Smith v. Boise Kenworth Sales, Inc.,* 102 Idaho 63, 625 P.2d 417 (1981); *Schaefer v. Elswood Trailer Sales, Inc.,* 95 Idaho 654, 516 P.2d 1168 (1973). In ruling on a summary judgment motion, the facts are to be liberally construed in favor of the party opposing the motion; he is to be given the benefit of all favorable inferences which might reasonably be drawn from the evidence. *Taylor v. Choules,* 102 Idaho 222, 628 P.2d 1056 (1981). If the record contains conflicting inferences or reasonable minds might reach different conclusions, a summary judgment must be denied. *Farmers Ins. Co. of Idaho v. Brown,* 97 Idaho 380, 544 P.2d 1150 (1976).

■ The time when a cause of action accrues may be a question of law or a question of fact, depending upon whether any disputed issues of material fact exist. *See Brown v. Babcock,* 273 Or. 351, 540 P.2d 1402 (1975). Where there is no dispute over any issue of material fact regarding when the cause of action accrues, the question is one of law for determination by the court. *See Mantz v. Follingstad,* 84 N.M. 473, 505 P.2d 68 (App.1978). *See also* 54 C.J.S. Limitation of Actions § 399(b). On the other hand, where there is conflicting evidence as to when the cause of action accrued, the issue is one of fact for the trier of fact. The case law of other jurisdictions is replete with authority for this position. *See, e.g., Enfield v. Hunt,* 154 Cal.Rptr. 146, 91 Cal. App.3d 417 (1979); *Bipso v. Burton,* 147 Cal.Rptr. 442, 82 Cal.App.3d 824 (1978); *George v. W–G Fertilizer, Inc.,* 205 Kan. 360, 469 P.2d 459 (1970); *Hill v. Squibb & Sons, E.R.,* 181 Mont. 199, 592 P.2d 1383 (1979); *Christensen v. Rees,* 20 Utah 2d 199, 436 P.2d 435 (1968); *Ruth v. Dight,* 75 Wash.2d 660, 453 P.2d 631 (1969); *Hill v. Clarke,* 241 S.E.2d 572 (W.Va.1978). Thus, whether the trial court was correct in holding, as a matter of law, that plaintiff's claim was barred by the statute of limitations and in granting summary judgment depends on whether there were any disputed issues of material fact regarding when the plaintiff "[knew] or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of." I.C. § 5–219(4).

■ In determining whether or not the plaintiff "should have been put on inquiry regarding the condition or matter complained of," the first question to be answered is what is the "condition or matter complained of"? If that "condition or matter" is merely that she was having serious problems along the incision from the surgery performed by Dr. Cox, then as respondent aptly points out in his brief, "shortly after release from the hospital in Pocatello in 1974 she was convinced something had been left inside, something that felt heavy and gave her continual trouble from then until July of 1977. This might well activate the statute of limitations on the basis that this amounted, as a matter of law, to being put on inquiry regarding the condition . . . ." However, the record discloses repeated visits to Dr. Cox, who allegedly told plaintiff that there was nothing wrong with the surgery, and even suggested that her problem might be mental and not physical. After several months of this advice, plaintiff became dissatisfied with Dr. Cox and eventually contacted other doctors about the condition, all of whom treated her for infections and irritations in the incision area, but none of whom ever suggested that the cause of her "condition" was attributable to a foreign object being left in her body as a result of the Cox surgery. Plaintiff cannot be attributed with sufficient knowledge as a result of these medical evaluations and opinions to put her "on inquiry regarding the condition or matter complained of" within the meaning of the statute.

■ We construe the statutory language, "condition or matter complained of," to mean the condition which ultimately is alleged to constitute the malpractice or negligence of the doctor, *i.e.,* in this instance the leaving of a foreign object in her body. None of the advice which she received from the doctors from the time of the operation

performed by Dr. Cox in 1974, up to her examinations by Dr. Reyes and Dr. Abando in July of 1977, were sufficient, as a matter of law, to put the plaintiff "on inquiry regarding the condition or matter complained of."

█ In April of 1977 Mrs. Reis contacted a Dr. Abando in Woodstock, Illinois, concerning lower abdominal pain. He treated her for a urinary infection and did not observe any symptoms or redness along the hysterectomy scarline at that time. Later, on July 14, 1977, Dr. Reyes, also of Woodstock, Illinois, and an associate of Dr. Abando, examined Mrs. Reis concerning her complaint of abdominal pain. At that time his examination disclosed "a tender area over the abdominal wall where old stitch marks were seen." Dr. Reyes testified, "At that time I thought there probably was an old stitch infection." He continued her on penicillin and advised hot packs, and told her that if it did not disappear within seven to ten days to come back to see him. Two days later Mrs. Reis went to the hospital emergency room because of the pain and was treated for a skin reaction around the surgical scar.

On July 25, 1977, Mrs. Reis returned to Dr. Reyes who testified, "I told her that we had to look further into her abdomen to see whether there was anything in there that was forming because our rule in thumb in medical practice in non-healing wounds for an old surgical site is that you have to look for foreign bodies. In fact, I was looking for an old non-dissolved stitch at that time." Dr. Reyes observed a lump in the front of the abdominal wall and ordered frontal and lateral X-rays to be taken. Dr. Reyes testified that "[i]n many cases there are many patients who are allergic to stitches. When this occurs, the stitch never dissolves. It just continues and becomes an irritant. That was what was on my mind at that time." Dr. Reyes testified that during that interview with Mrs. Reis, "I

advised her it was probably an old stitch that was undissolved and had become infected." After the results of the X-rays were in, showing a radiopaque mass in her abdomen, Dr. Reyes called his associate Dr. Abando, the surgeon, to further examine Mrs. Ries. Dr. Reyes did not examine Mrs. Reis again or talk to her prior to the surgery other than to call and "advise her that there was something that I saw in the anterior abdomen which I was referring her to the surgeon for." Dr. Reyes testified that he did not tell her what the X-ray showed, but referred her to his associate, Dr. Abando, the surgeon, to explain what the X-rays showed.

Dr. Abando testified that he reviewed the X-rays and that although he could see a foreign body, he did not reach any conclusions as to the makeup of the object. Elsewhere in his deposition, Dr. Abando stated that he interpreted the object disclosed in the X-rays to be a surgical sponge. Dr. Abando further testified that he discussed the X-rays with Mrs. Reis on August 3, 1977, and advised her only that a foreign body was present as a result of the prior surgery. The record does not contain any testimony of Dr. Abando that he told Mrs. Reis what he thought the object was or that he specifically negated the information given to her by Dr. Reyes, that the object was a non-dissolved stitch.

The plaintiff Mrs. Reis testified that she was examined on July 26, 1977, by Dr. Reyes who ordered that the X-rays be taken at a local hospital. She testified that immediately after the X-rays were taken Dr. Abando [Dr. Reyes][2] stated:

"He said, 'Well, there is, according to the X-rays, something, a dark area in there that shows there is an inferior (sic) body.'

"Q. What kind of body?

"A. I think he said 'inferior.'

"Q. 'Inferior' or 'foreign'?

"A. Yeah.

---

**2.** Although Mrs. Reis testified that it was Dr. Abando who talked to her on the day the X-rays were taken, a review of the record clearly establishes that Dr. Abando did not discuss the X-rays with Mrs. Reis until August 3, 1977. It

is apparent from the record that it was Dr. Reyes, rather than Dr. Abando, who briefly discussed the X-rays and the possibility of a non-dissolved suture with Mrs. Reis immediately after the X-rays were taken.

"Q. 'Inferior' or something that should not be there?

"A. He said he was going to call Dr. Cox in Idaho.

"Q. How did he know the name of Dr. Cox?

"A. I had told him. It was on my records. He had them.

"Q. Did he describe the body or object that was in there as a possible surgical sponge?

"A. He did not describe it as anything. He wanted to know what it was or what it could not be. He told me there was a type of suture used back then that they were having problems with. He said, 'I have got to find out what kind of sutures Dr. Cox used on you.'

"Q. Did he ask you how to get a hold of Dr. Cox?

"A. I gave him Dr. Cox's full name.

"Q. What is the next contact you had with Dr. Abando then after you had given him Dr. Cox's name and he had told you there was something in the abdominal area?

"A. It seems like I was talking to him at least every day until I went into the hospital.

"Q. Was there an occasion when Dr. Abando and you discussed the necessity of an operation to remove what was there?

"A. Yes.

"Q. Do you remember when that was?

"A. Just before I went into the hospital.

"Q. Would you tell me about that discussion? What did the doctor tell you was there, what he expected to find, and what he expected to do?

"A. He did not know what he expected to find. He knew that it was not the sutures. He did not have any idea of what it could be; but, whatever it was, it had to come out because it was causing me a great deal of pain and problems.

"Q. Did he indicate to you again that it was either an inferior or foreign body?

"A. It was something that didn't belong in there, he said.

"Q. Did he say it had been as a result of the operation by Dr. Cox?

"A. No.

"Q. Did you take it to mean that that was how it got in there, from Dr. Cox's operation?

"A. That was the only operation I had in that area.

"Q. Did you take it to mean that it came from Dr. Cox's operation?

"A. Yes. I assumed that on my own."

The trial court concluded on this record that "[t]here is no dispute that Mrs. Reis knew of the foreign object within her body on or before August 3, 1977, and she did not file for prelitigation until August 8, 1978." However, viewing the evidence most favorably to the plaintiff, as we must on summary judgment, and granting her every favorable inference which may be drawn from the evidence, reasonable minds could differ on the question of when Mrs. Reis was told by Dr. Abando that her problem was not caused by an undissolved suture as Dr. Reyes had advised her, but was caused by some other foreign body that may have been left in her abdomen by Dr. Cox. Based upon her testimony, a reasonable juror could conclude that as late as August 8, 1977, one year before the filing of her prelitigation claim, Mrs. Reis still reasonably believed that the foreign body which was causing her problems was an undissolved suture as she had been advised by Dr. Reyes, rather than some other object left in her abdomen. In our view of this record and the language of the statute, knowledge of the possibility of the existence of an undissolved suture would not, as a matter of law, have "put [her] on inquiry regarding the condition or matter complained of." The date, if any prior to the second surgery, on which Mrs. Reis was advised by Dr. Abando that the foreign body appearing on the X-rays was not an undissolved suture was not definitely established in the record. Therefore, we conclude that the trial court erred in granting summary judgment.

The judgment of the district court is reversed and the cause remanded for further proceedings. Costs to appellant.

BISTLINE, J., and McFADDEN, J. (Ret.), concur.

SHEPARD, J., concurs in result.

DONALDSON, Justice, dissenting.

I dissent. The majority is construing I.C. § 5–219(4) much too narrowly. The standard to be applied in regard to the granting of a motion for summary judgment by the trial court is that the trial court must examine the issues, for the purpose of determining the existence of any material fact issue. If no such material fact issue exists, a summary judgment should be granted. Disputed issues of fact, which if resolved in favor of the plaintiff would still fall short of establishing plaintiff's claim, are not material issues of fact and, therefore, do not stand in the way of summary judgment. *McNeil v. Gisler,* 100 Idaho 693, 604 P.2d 707 (1979); *Bandelin v. Pietsch,* 98 Idaho 337, 563 P.2d 395 (1977). Applying this standard to the facts of this case shows there exists no dispute of any material fact and, therefore, the motion for summary judgment was properly granted. The statute of limitations for discovery of a foreign object in the body of the patient is set by I.C. § 5–219(4). This statute establishes a discovery rule for this specific type of case, and allows a one-year time after "injured party knows or in the exercise of reasonable care should have been put on inquiry regarding the condition" of a foreign object.

After looking at the X-ray and interpreting the mass to be a sponge, Dr. Abando testified that he discussed "this particular problem" with the patient on August 3, 1977. He informed her on this date that there was a foreign body left because of her previous surgery. Mrs. Reis testified that Dr. Abando discussed the necessity of an operation to remove what was there "[j]ust before I went into the hospital." She testified that Dr. Abando stated "[h]e did not know what he expected to find. He knew that it was not the sutures. He did not have any idea of what it could be; but, whatever it was, it had to come out because it was causing me a great deal of pain and problems." Mrs. Reis also stated that she assumed it came from Dr. Cox's operation.

Dr. Abando did not testify that he discussed "this particular problem" on any date other than August 3, 1977, and even though Mrs. Reis could not remember the exact date that Dr. Abando told her it was not the sutures, their testimony taken as a whole, shows that Dr. Abando told Mrs. Reis on August 3, 1977, that it was not the sutures. Therefore, she had notice more than a year before the suit was filed.

The holding of the majority would seem to require knowledge of specific foreign object in the body. However, our statute only requires that a person be "put on inquiry regarding the condition or matter complained of . . . ." This is an objective standard and does not require the precise knowledge of the type of foreign object. The majority is applying a subjective standard which would require actual knowledge and the statute does not so require.

Even if we were to strain the facts and assume that she was not put on inquiry notice until right before she entered the hospital on August 8, 1977, the record indicates that the State Board of Medicine did not receive the prelitigation request until August 9, 1978. I.C. § 6–1005 states that "the applicable statute of limitations shall be tolled . . . during the time that such a claim is *pending* before such a panel . . . ." (Emphasis added.) Following this statute the proceeding will not toll the statute of limitations unless a claim is pending and a claim cannot be pending until it is received. Since there is no question of fact that the claim was not received by the State Board of Medicine until August 9, 1978, I.C. § 6–1005 did not toll the running of the statute of limitations on August 8, 1978. This rationale is consistent with I.C. § 5–228 that states an action in the courts commences "when the complaint is filed."